21-1195 Casias v. Raytheon Company, and for the appellant is Mr. Schenberg. You may proceed. May it please the Court. On page 21 of his brief, plaintiff says that the statute at issue prohibits a defense contractor from taking action against an employee who has reported improper activity. But that sentence skips the essence of the statute and what is missing in this case. The statute only prohibits actions when they are taken, quote, as a reprisal for such an employee report. Here, even plaintiff did not connect his complaint of adverse action to his report. Instead, plaintiff testified repeatedly that he was reassigned because Raytheon Management was scapegoating him, trying to shift blame from itself to him for its decisions, not as a reprisal, but as a way of scapegoating. Quote, they directed me to falsify this data back in November of 2015, and then in May of 2016, they were holding me responsible for that. I was being scapegoated for the decisions by my program management. Plaintiff makes no mention of his report, much less that retaliation for his report caused his reassignment six months later. No mention of the protected activity. Scapegoating may not be admirable, but it is logically and legally different from retaliation. And so while- Can you just tell me, so is your position that there is no evidence, none, zero, that connects the reporting, the protected activity with his reassignment? I think that there is no evidence on which a reasonable jury could reach this verdict under this statute. That's correct, Your Honor. Well, that's not my question. I mean, I appreciate that answer, but are you telling me there's no evidence of causation? I don't think there is any evidence of causation. The standard, I think, is whether a reasonable jury could make the determination that they did, but I don't think that there is any. And again, while a reasonable jury might have believed plaintiff's own words and said, I was being scapegoated, essentially plaintiff pleads himself out of court in that sense, and no reasonable jury could have found a violation of the statute on that evidence. And that's before we get to the fact. That's before we get to the fact. I mean, that's sort of reviewing the evidence in favor of your client and not in favor of the jury's verdict. Couldn't you also look at it as a jury could take the testimony about being scapegoated to include his complaining of unethical conduct, which they then made him continue to do, and consider that to be scapegoating? Well, that's not what scapegoating means. Well, I mean, what does scapegoating mean? I mean, it's not your definition of scapegoating, but, I mean, 12 citizens might have different opinions of what scapegoating is. I think it means exactly what the plaintiff himself referred to, which is they're trying to hold me responsible for these decisions. They're seeing, the management is seeing that there's bad data there, and they're trying to shift the blame to me for the bad data. And that is a completely different theory. Trying to shift the blame from oneself to someone else is not saying, hey, I made a report, and because I made a report, they were mad at me, and they retaliated against me. Took as a reprisal. And that's what the statute requires. I mean, doesn't all this stuff fit together a little bit more than that, though? I mean, isn't his case, I mean, maybe he said they were trying to hold him responsible for their own false reporting that they made him do. But at the same time, his case also involves his sort of defense of himself in that regard, where he says, I knew it was wrong. I told them it was wrong, and their response was to get mad at me. And next thing I know, I'm transferred. I just don't think that's what he says. And he goes on to say that the decision maker for Raytheon, that he says that Joe Holland had no reason to retaliate. That's just more admissions that there's a lack of causation evidence here. Now, the district court ignores all of that testimony, and then the district court errs glaringly by effectively reversing the burden of proof, holding that the jury's finding about whether Raytheon proved its affirmative defense is somehow itself evidence that would support plaintiff's own burden of proving that there was retaliation in the first place. Let me ask you this. So you're pretty strong on your case. Do you do agree that the hill you're climbing is a steep one, don't you, that the burden you have here today is a high one? Well, I understand that reversing the jury – You're coming here from a jury verdict. Understood. I understand that it's not easy to get a jury verdict reversed, and I certainly want to talk about the damages award before I run out of time. I take your point, Your Honor, but I do think that the plaintiff essentially admitted that this is not an adverse action that was taken under the statute. It wasn't pretty. Maybe the jury didn't like Raytheon because of it. That's their purview. But the statute is pretty specific, and I don't think he met that. Right. And you may be right. I guess what I'm struggling with here is that, you know, if you take certain phrases that were said at trial, I mean, they can be made to sound like they're extremely damning for the plaintiff. But the jury heard an amalgamation of things that could lead to them drawing an inference that there was retaliation, and I'm just exploring that with you. And I'm concerned that maybe I don't want to be drawn into looking at all of this evidence in a light most favorable to your client, because I think you would agree that our job is to look at the evidence in a light most favorable to the plaintiff who won below. I understand that that's the standard, and absolutely, of course, I'm not asking you to do anything different. But I do think that the statute has specific text. It requires certain types of evidence, and that the jury didn't like Raytheon or that the jury felt like somehow or other the plaintiff had been wronged is just not enough to show a violation of the statute. We have to look at whether there's evidence that the statute itself was violated. Okay. I mean, that's a legitimate argument. I think the district court tried to save this verdict. It glaringly erred by effectively reversing the burden of proof, as I've said. Plaintiff in his answer brief doesn't really even try to defend the district court's reasoning there. The district court tried to turn something, the temporal evidence, into some kind of evidence of causation. This court's made clear that the passage of even six weeks means that proximity is itself not causation evidence. And this court has held that common sense dictates that emotions cool over time after protected activity. But the district court instead errantly suggests that this court's decision in Lockheed Martin somehow changes the relevant time frame because it's a contributing factor standard. But that case says no such thing. And the district court got the factual record just completely wrong by incorrectly stating that, quote, unquote, his complaints were ongoing. The cited transcript doesn't show anything about ongoing complaints, only discussions that the Air Force had asked questions about the data. And there's also no evidence about when those discussions occurred. It could have been six months earlier. It also could have been after the reassignment. Plaintiff filed his own complaint with the Department of Defense afterwards. Obviously, questions related to that couldn't be evidence of causation of the reassignment. And the fact that Joe Holland was upset in November 2015 is just too slender a read to support the verdict here, where the only way to reach a retaliation verdict is to ignore the plaintiff's admissions that something other than his report to management caused his reassignment. And instead, in the face of his admission that Joe Holland had no reason to retaliate, nonetheless speculates that Joe Holland secretly harbored retaliatory animus for six months. That makes the verdict unreasonable. This court held in truck insurance exchange that jury verdicts may not be based on speculation or be contrary to the uncontested admissible evidence. And at the very least, at the very least, it's clear that the great weight of the evidence goes the other way. Even if there was evidence of retaliation, and even if the reassignment could be a material adverse action, and by the way, their only response to our authority that it's not a material adverse action was to say, well, it's an unpublished opinion. Well, an unpublished opinion is still persuasive authority in this court, and it cites to Stover v. Martinez as having the same facts, and that is a published opinion. But even if there was evidence of actionable retaliation, the jury's million-dollar damages award should not stand. We know for a fact, for a fact, that this is a jury not guided by the evidence when it comes to damages. The jury tried to award $43,000 in lost wages when the undisputed evidence and just basic math showed that there were $0 in lost wages. The same jury awarded a million dollars in emotional distress for a plaintiff whose claim is that he was given a job with the same exact title, the same exact pay, the same exact benefits, but less to do for the few weeks that he worked in the new position. Did the plaintiff argue for lost wages in closing argument? I don't recall. I'm sorry. I'd have to look at the transcript. Did you do the trial? I did not. Was there a request for a punitive damage instruction in this case? I don't believe so. Okay. So he only endured this terrible situation of the same pay for a few weeks. Why only a few weeks? Because he left Raytheon voluntarily. Why did he leave Raytheon voluntarily? Not because he was so emotionally distraught that he went looking for another job. He wasn't looking for another job at all. He left because shortly after his reassignment at Raytheon, a former colleague who is now at a competitor called and said, hey, we've got this opening I think you'd be perfect for, and he took the job. Well, I mean, there was testimony about depression, the stress, the divorce. I mean, are those proper pieces of evidence under the rules for non-economic losses? Sure. Or is your argument that the testimony was just insufficient to support this large? It's the largeness of the award, Your Honor. It's an egregious award based on that. I think that's right. Now, we can't disprove an emotional distress award mathematically like we can a lost wages award, but there are factors that courts look to. If you look at the nature and severity of Raytheon's conduct here, giving an employee the exact same pay in a different role must be on the slighter side of any scale that measures the severity of employment discrimination, especially in the context where the plaintiff has admitted a different reason that's not retaliation. And he stayed in the role only a few weeks. Another factor is he got to stay in his chosen field, and though he did experience some distress, and I'm not suggesting he didn't, he never sought any health care assistance for any of it. Whatever embarrassment he endured at Raytheon lasted only a few weeks. Now, he did testify that his brief reassignment in May, quote, contributed to his divorce. He doesn't say how or how much. He doesn't even say that the reassignment triggered his marital problems or even the filing of the divorce, and he admits that the whole thing was finalized just a few months later. On facts much more disturbing than this case, the juries regularly award less. The blank, sad decision, I think from the District of Colorado, describes $150,000 to $300,000 as the upper limits of an emotional distress award. This case doesn't merit the upper limits. It certainly doesn't merit a million dollars. And that stricken lost wages award, it also helps put the emotional distress award in some perspective. That same decision says that a multiple of three is a commonly used yardstick for emotional distress damages. A million dollars is a multiple of 23 if that $43,000 in lost wages had stood. And the court also strayed from its role here, really, refusing any but the most superficial analysis of the jury's award. It explicitly refused to apply the factors used by courts on the somewhat, frankly, illogical grounds that the jury wasn't instructed to consider them. That misunderstands the district court's duty to evaluate the relationship between the evidence and the award. It is not enough to say, as the district court did here, that I'm a firm believer in the Seventh Amendment or that the jury has a lot of discretion. We all believe in the Seventh Amendment, but it's not a license to punish Raytheon through an award that's supposed to be compensatory. The jury, yes, it has latitude, but that latitude is cabined by the evidence, and this award is shockingly high under that evidence. Judgment as a matter of law should have been entered because no reasonable jury could have found a violation of the statute. And at the very least, the overwhelming weight of the evidence supports a new trial. But even if the liability verdict stood, the jury's award requires at the very least a substantial reduction. Thank you. Thank you, counsel. Let's hear from Mr. Myrie. You may proceed. May it please the court, counsel. Let's parse the evidence because I think Judge Carson was right on the money when noting that Raytheon is really asking this court to view the evidence more in its favor. In November 2015, Mr. Holland, and I think it's important to name Mr. Holland, not just Raytheon. Mr. Holland, who was Casillas' direct supervisor, was the one who asked Mr. Casillas to falsify data that was going to be given to the United States Air Force as part of a multibillion-dollar contract. Mr. Casillas raised ethical concerns about that, saying, well, that's not right. And Mr. Holland became angry and said, do it, forced him to do it. Well, counsel, I really appreciate that statement. But I think what your opposing counsel is saying is that is exactly what the jury based its verdict on. They did not like that conduct. And you failed to connect Mr. Casillas being blamed with what happened to him later, six months later. Well, Your Honor, I appreciate that question because it goes to what the jury was capable of making inference of. If you look at the additional evidence, and this is where Judge Blackburn was correct, between that meeting in May 2016, there were two or three other discussions about the test data being inaccurate. Now, the fact that the test data was inaccurate was the problem. So a jury could reasonably infer that we're talking about the same ethical issue being raised again. In May 2016, Holland then demotes Casillas. We also have the jury's rejection, express rejection of Raytheon's evidence, page 442 of the appendix. Raytheon did not prove that it would have taken the same employment action against Casillas, even if he had not engaged in protected activity. Casillas was shocked that Raytheon was holding him responsible for the direction that Holland required him to falsify the data. But look what else happens in May of 2016. Holland tells David Martinez, who works with Casillas and was actually the replacement for Casillas' position when he was demoted, tells him around that time in May of 2016, and this is page 1028 of the transcript, the data was not correct, the reports were falsified, he asked Martinez to take over Casillas' position. So the scapegoat argument is this, that Mr. Holland is the one who orders the unethical activity. Mr. Casillas objects to it. Mr. Casillas is the one who knows that Mr. Holland is the one who asked him to do it. And Mr. Holland is the one who makes Casillas a scapegoat because Holland is the one who makes the unethical conduct. So the jury rejects Raytheon's argument that, well, it would have taken the, it would have done the same thing despite the protected activity. And the jury says, no, we disagree with that. What does that mean? That means that there is a causal connection between the November 2015 meeting all the way to the May 2016. And I think it's important to distinguish some of the cases. Here we have Holland is the one who orders the unethical activity. Holland is the one who gets mad at Casillas. Holland is the one that has further discussions with this. Holland is the one who makes the decision to demote. So it's all the same decision-makers. Some of the cases that's cited by Raytheon, the decision-maker doesn't even know about the protected activity by the worker who is disciplined. So the jury had enough here, and I think that's what Judge Blackburn recognized in upholding that. Also, I want to briefly address this wasn't a demotion. Before you do that, let me ask you a question about the unethical activity. Was it, did anyone dispute at trial that Holland told him to falsify the data? Your Honor, I actually don't recall. But Mr. Casillas testified that that's what Holland ordered him to do, and it's up to the jury to make that credibility determination. No, I agree with that. I honestly do not recall Mr. Holland's testimony on that, Your Honor. I apologize. But on the demotion, Casillas testified, and this is page 958 of the appendix. He testified in that meeting, and this is referring to the May meeting, and this is Mr. Casillas saying, he said he was demoting me from my position. So you have Casillas essentially testifying to an admission of Mr. Holland that it was a demotion. The jury could take that evidence alone and conclude that it was a demotion because it could give credibility to Mr. Casillas' testimony, which it clearly did, and enter the, and conclude that Mr. Holland said he was demoting Mr. Casillas. So that alone is sufficient on the record. Would his subjective view of the transfer, is that really legally significant? Is that? The subjective, no. But this is not a subjective testimony. It is him recounting what happened in the meeting and saying that Mr. Holland told him, Mr. Casillas, that he was demoting me. That's what page 958 of the appendix says. It's in the transcript. That's an admission by Mr. Holland. Now, Mr. Holland may deny that, but that's the jury to judge that credibility. But there's also other evidence supporting it, objective evidence. Mr. Casillas said that he lost his CAM duties. He lost his scheduled duties. Quote, probably 90% of the responsibilities he had were pulled out from underneath him. Mr. Holland even admitted at page 1256 that Mr., that after this demotion, Casillas had fewer employees and less responsibility. So, counsel, can I just get you to speak to, I, I see that side of it. But the fact that he got the same pay, isn't that balanced, I guess, against? It was, it was evidence for the jury to weigh in determining whether or not it was an adverse employment action or not. But as the Supreme Court said in the Burlington case, simply because you have the same pay and essentially the same hours, that doesn't mean that you're not reassigned. Being, being given different duties or being given lesser duties can be a demotion. And I think the other important thing is Mr. Casillas testified how this, you know, essentially ruined his reputation. So you have a reputational interest in your job duties. Mr. Martinez, who took over for Mr. Casillas, testified that Mr. Casillas went from managing 30 to 40 people down to two people. You know, I worked in a large law firm. I was a partner. If I had all my committee responsibilities stripped from me, I would still be a partner, but would I be still considered at the same level? I don't know. You might be considered lucky. Yeah, yeah, that's what I actually considered it, right. So, so let me, let me ask you, let me ask you a question. So internally, is there a problem here because the, the damage to his reputation was internal damage as opposed to external damage? I mean, it didn't prevent him from getting another position that seems equally satisfactory with another company. Well, I would disagree with that, that point. He, he did get a, he testified he had a $7,000 less salary than when he went to Ball. He had, he, he got lesser benefits in terms of employee retirement. What was his testimony as to why he accepted the job? Because your opposing counsel indicated that it was, had something to do with a personal relationship soliciting him to a great new job. Mr. Casillas' testimony about why he left Raytheon was for his own health and sanity, and that's page 964 of the appendix. So he couldn't stay at Raytheon was his view. He was, he, he viewed himself as a pariah. He, he had lost his reputation within Raytheon. What was the evidence other than it was obvious to everybody that, that I was a pariah or that I was, you know, demoted? What, what was his evidence as far as specific evidence of other people perceiving him as being, you know, lesser in reputational form? Well, certainly Mr. Martinez' testimony was that he went from managing fewer employees and less responsibility, managing fewer people, and that Mr. Sheldon said, well, you know, that, people noticed that. But what. Okay, but doesn't he have to have a, he has to have some damages from that reputational harm, doesn't he? I mean, doesn't he have to have damages? Doesn't it have to impact him somehow? Well, the impact for the non-economic damages is the, the, the other effects, the, the high blood pressure, the blood pressure fluctuations, the weight loss and gain, the sleep loss, the, the, the destruction to his family relationships, or the hardships on his family relationships, he said, with his immediate family and his children, and that it was a contributing factor, it was divorce. Now, Raytheon describes this as garden variety stress, but high blood pressure is not garden variety stress. It's, it's a killer. It can be a killer. So I, I think that underestimates the severity. And you've got to remember that the jury is the one seeing how he's conveying this evidence to him. And I think that's one thing Judge Blackburn recognized. High blood pressure, it's a killer. Divorce, one of the single most psychologically damaging thing that can happen to humans. And the jury was able to take that into consideration in fashioning an award that it thought was appropriate. Did he, did he seek medical help? He, he did not seek medical help, no. Well, there's not evidence in the record that he sought medical help, but this, this court's precedent says that, that although that can be a factor, it's not required. The jury is allowed to view that evidence and, and make a judgment accordingly. Corroborating medical evidence certainly can help, but it is not a requirement. It's not like in Colorado where if you want to bring a professional malpractice case, you have to have a certification from a medical expert. Can you help us understand where the million dollars came from? Well, the million dollars is the jury's judgment of what his pain and suffering was worth. And I want to note. But there was no, was that a wholly discretionary decision then? There was no basis? Well, it's got to be based on some evidence, for sure. And, and that is the evidence of the, the, the, I mean, the, the monetary amount, no. And I would commend to this court the Ike case out of the Eighth Circuit, where the court said especially where the jury is being asked to award non-economic damages that are hard to translate into economic terms, that's where the court should be especially deferential. And that's the Ike case cited in our answer brief. Did, did you try the case? I did not try the case, Your Honor. Oh. Did the, did the plaintiff's counsel below ask for a million dollars of the, in closing? And was there a number put on the non-economic damages? Your Honor, like Mr. Schenberg, I do not recall what the ask was in the closing argument. And I apologize for that. I just, I just don't remember. But I did want to pick up on one thing that they mentioned in, in my remaining time about, you know, the Blankstead case and making these comparisons. This court decided a case, I don't remember, Osterhout, which is cited in our answer brief, last year, where the court said in general comparisons yield no insight into the evidence the jurors heard and saw or how they used it in their deliberations and, and detract from the appropriate inquiry. In other words, the comparisons detract from the appropriate inquiry, which is whether the verdict is against the weight of the evidence. Now, the court did note that exceptions may exist when a previous case is similar enough to serve as a meaningful benchmark. And I would submit that the cases that they cite and rely on and argue that justify a remittitor or a new trial, just don't serve as a meaningful benchmark here because they just aren't similar enough. And I, if there aren't any further questions, I will go ahead and ask that the court affirm the judgment of the district court in its entirety and also enter in order a warning, Mr. Casillas, his appellate attorney's fee under the defense contractor whistleblower protection act. Thank you. Thank you, counsel. Counsel are excused and the case shall be submitted.